## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NELSON PIEDRA,** | : | **CIVIL ACTION NO. 3:22-1126** |
| **Petitioner** | : | |
| | : | **(JUDGE MANNION)** |
| **v.** | : | |
| **WARDEN J. SAGE,** | : | |
| **Respondent** | : | |

## <u>MEMORANDUM</u>

Petitioner, Nelson Piedra, an inmate confined in the Schuylkill Federal Correctional Institution, Minersville, Pennsylvania, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241. (Doc. 1). Petitioner claims that "the BOP has improperly placed the Public Safety Factor of Alien" on him which is "preventing him from being properly placed in a minimum security level, it is also preventing him from receiving earned time credits under the FSA, and from a sentence reduction for the completion of the R-DAP program." (Doc. 2, Memorandum in Support). For relief, Petitioner requests the Court to "order BOP staff to remove the 'PSF Alien' from [him] and then properly classify him." Id. For the reasons set forth below, the Court will dismiss Petitioner's §2241 petition without prejudice for lack of jurisdiction.

## I. __Background__

Piedra is currently serving a 120-month federal prison term, imposed May 10, 2019, for drug trafficking conspiracy involving methamphetamine and cocaine. (Doc. 6-1 at 6, Criminal Judgment). His prison term is projected to expire on June 29, 2027. Id.

The BOP maintains a database known as SENTRY which stores data regarding inmates' use of the BOP's administrative remedy program. (Doc. 6-1 at 2, Declaration of Drew O. Inman, BOP attorney advisor). The BOP's administrative remedy program database confirms that Piedra did not file any administrative remedies. Id. Piedra does not have a remedy retrieval form because he has never utilized the administrative remedy program. Id.

In his §2241, Piedra alleges that the Bureau of Prisons (BOP) imposition of a public safety factor ("PSF") of "alien" upon him. (Doc. 2). Petitioner argues this PSF is illegitimate under BOP policy and should be removed. Id. He believes that "alien" PSF prevents him from (1) transferring to a minimum-security facility; (2) receiving consideration for release under the CARES Act; (3) receiving earned time credits ("ETCs") under the First Step Act of 2018; and (4) receiving a sentence reduction for completing the BOP's residential drug abuse treatment program ("RDAP"). Id.

Respondent contends that Petitioner's §2241 petition should be denied because: (1) Petitioner failed to exhaust his administrative remedies; and (2) Petitioner's claim is not cognizable under §2241. (Doc. 6).

## II. Discussion

### A. Exhaustion of Administrative Remedies

Although there is no explicit statutory exhaustion requirement for §2241 habeas petitions, the United States Court of Appeals for the Third Circuit has consistently held that exhaustion applies to such claims. See Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000) (citing Schandelmeier v. Cunningham, 819 F.2d 52, 53 (3d Cir. 1986)); Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion allows the relevant agency to develop a factual record and apply its expertise, conserves judicial resources, and provides agencies the opportunity to "correct their own errors" thereby fostering "administrative autonomy." Moscato, 98 F.3d at 761-62 (citations omitted).

Exhaustion is the rule in most cases, and failure to exhaust will generally preclude federal habeas review. See Moscato, 98 F.3d at 761. Only in rare circumstances is exhaustion of administrative remedies not required. For example, exhaustion is unnecessary if the issue presented is

- 3 -

one that consists purely of statutory construction. See Vasquez v. Strada, 684 F.3d 431, 433-34 (3d Cir. 2012) (citing Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981)). Exhaustion is likewise not required when it would be futile. Rose v. Lundy, 455 U.S. 509, 516 n.7 (1982).

The Bureau of Prisons has a specific internal system through which federal prisoners can request review of nearly any aspect of their imprisonment. See generally 28 C.F.R. §§542.10-.19. That process begins with an informal request to staff and progresses to formal review by the Warden, appeal with the Regional Director, and—ultimately—final appeal to the General Counsel. See id. §§542.13-.15. Specifically, the system first requires an inmate to present their complaint to staff before filing a request for administrative relief, which staff shall attempt to informally resolve. Id. §542.13(a). If informal resolution is unsuccessful, an inmate may file a formal written complaint to the Warden, on the appropriate form, within twenty calendar days of the date of the event or occurrence and the Warden shall provide a response within twenty calendar days. Id. §§542.14, 542.18. If the inmate is dissatisfied with the Warden's response, he may file an appeal to the Regional Director within twenty calendar days. Id. §542.15(a). The Regional Director has thirty calendar days to respond. Id. §542.18. Finally, if the inmate is dissatisfied with the Regional Director's response, that decision

- 4 -

may be appealed to the BOP's General Counsel at the Central Office within thirty calendar days from the date of the Regional Director's response. Id. §542.15(a). No administrative remedy appeal is considered fully exhausted until reviewed by the General Counsel. Id. §542.15(a).

The BOP maintains a database known as the SENTRY Inmate Management System ("SENTRY"). In the ordinary course of business, computerized indexes of all formal administrative remedies filed by inmates are maintained by the Institution, Regional, and Central Offices. SENTRY generates a report titled "Administrative Remedy Generalized Retrieval" which allows codes to be entered to identify the reason or reasons for rejecting a request for administrative relief. Because Petitioner has never utilized the administrative remedy program, he does not have a remedy retrieval form.

Piedra does not dispute that he failed to avail himself of the administrative remedy process. (Doc. 2 at 2). Rather, he argues that he should be excused from exhausting administrative remedies because it would be futile, and he is being subjected to irreparable harm. Id. Even if Petitioner thought pursuit of his administrative remedies would be futile, "[c]ourts in the Middle District of Pennsylvania have consistently held that 'exhaustion of administrative remedies is not rendered futile simply because

a prisoner anticipates he will be unsuccessful in his administrative appeals.' " Ross v. Martinez, No. 4:09-cv-1770, 2009 WL 4573686, at *3 (M.D. Pa. Dec. 1, 2009) (quoting Malvestuto v. Martinez, No. 1:09-cv-1339, 2009 WL 2876883, at *3 (M.D. Pa. Sept. 1, 2009)); see also Suarez-Sanchez v. Lane, No. 4:18-CV-1431, 2019 WL 1645231, at *3-4 (M.D. Pa. Mar. 5, 2019) (concluding that the petitioner's §2241 petition was subject to dismissal for failure to exhaust because the petitioner "never fully and properly appealed [his] grievance because he apparently deemed the grievance process to be a waste of time"), report and recommendation adopted, 2019 WL 1620339 (M.D. Pa. Apr. 16, 2019).

Thus, Piedra's §2241 petition must be dismissed for failure to exhaust his administrative remedies. To hold otherwise would frustrate the purposes of the exhaustion doctrine by allowing Piedra to invoke the judicial process despite failing to complete administrative review.

**B. Piedra's Claim is not Cognizable under §2241**

A federal prisoner may challenge the fact, duration, or execution of his sentence in a petition for a writ of habeas corpus pursuant to §2241. See Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 241 (3d Cir. 2005). Generally, a challenge to the "fact" of a sentence is an inquiry into the legality of the detention, and relief for unlawful detention is discharge from detention.

See Leamer v. Fauver, 288 F.3d 532, 540-41 (3d Cir. 2002). The "heart of habeas corpus" is immediate or speedier release from confinement. Id. at 541. Examples of habeas claims involving the duration of confinement include parole challenges, loss of good-time credits, and incorrect sentence calculations. See Wragg v. Ortiz, No. 20-5496 (RMB), 2020 WL 2745247, at *14 (D.N.J. May 27, 2020) (citing cases).

With respect to claims regarding the execution of a sentence, the United States Court of Appeals for the Third Circuit has noted that "the precise meaning of execution of the sentence is hazy." Woodall, 432 F.3d at 243. To discern its meaning, the Third Circuit considered "the plain meaning of the term ... which is to 'put into effect' or 'carry out.' " Id. (quoting Webster's Third New Int'l Dictionary 794 (1993)). In Woodall, the Third Circuit concluded that the petitioner was challenging the execution of his sentence, and therefore could proceed under §2241, because decisions regarding placement in community correctional centers ("CCC") "are part of the phase of the corrections process focused on reintegrating an inmate into society." Id. The Third Circuit concluded that Woodall's claim was distinguishable from "garden variety prison transfer[s]" because CCCs "satisfy different goals from other types of confinement." Id. Subsequently, the Third Circuit considered whether a petitioner's referral to the Special Management Unit ("SMU")

- 7 -

raised a claim challenging the execution of his sentence such that he could proceed under §2241. See Cardona v. Bledsoe, 681 F.3d 533, 534 (3d Cir. 2012). The Third Circuit concluded that Cardona's "claims do not concern the execution of his sentence, because the BOP's conduct is not inconsistent with his sentencing judgment." Id. at 537.

As noted above, Piedra challenges the BOP's application of the "alien" public safety factor to his file. A public safety factor "is relevant factual information regarding the inmate's current offense, sentence, criminal history, or institutional behavior that requires additional security measures to be employed to ensure the safety and protection of the public." Merchenthaler v. United States, No. 4:19-cv-471, 2020 WL 1244471, at *1 (M.D. Pa. Mar. 16, 2020). The Third Circuit, however, has concluded that "claims concerning the determination of ... custody level do not lie at the 'core of habeas' and, therefore, are not cognizable in a §2241 petition." Levi v. Ebbert, 353 F. App'x 681, 682 (3d Cir. 2009) (quoting Leamer, 288 F.3d at 542-44). Piedra has no "due process right to any particular security classification" and "federal habeas relief is unavailable" to him for this claim. Marti v. Nash, 227 F. App'x 148, 150 (3d Cir. 2007) (rejecting petitioner's claim that "the assignment of the public safety factor 'greatest severity' [was] erroneous and ... prevented him from being placed at a minimum security

level"); see also Briley v. Warden Fort Dix FCI, 703 F. App'x 69, 71 (3d Cir. 2017) (concluding that claims challenging the assignment of a public safety factor were not cognizable under §2241 because they do not challenge the fact, duration, or execution of a sentence); Hribick v. Warden Fort Dix FCI, 695 F. App'x 25, 26 (3d Cir. 2017) (concluding same). Thus, dismissal of the §2241 petition is appropriate.[1]

## III. Conclusion

Based on the foregoing, the petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241 will be dismissed.   An appropriate Order follows.

s/ Malachy E. Mannion
**MALACHY E. MANNION**
**United States District Judge**

**Dated:  December 30, 2022**
22-1126-01

---

[1]Piedra argues that the BOP is violating its own regulations in violation of the doctrine established in United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954). (Doc. 2 at 4). Under the Accardi doctrine, a court may set aside agency action when not in compliance with its regulations or internal procedures, even when those procedures are not required by the Constitution or a statute. See Leslie v. AG of the United States, 611 F.3d 171, 175-80 (3d Cir. 2010). Because Piedra's claims are not cognizable in a §2241 petition, the Court need not consider this claim.